UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Latasha Walker**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**Embassy Healthcare Management, Inc.**<br><br>Defendant. | No.<br><br>Judge<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT** |

Plaintiff, Latasha Walker ("Plaintiff"), individually and on behalf of all other persons similarly situated, sues the Defendant, Embassy Healthcare Management, Inc. (hereafter referred to as "Embassy Healthcare" or "Defendant") and alleges as follows:

**PRELIMINARY STATEMENT**

1. This lawsuit arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.,* Ohio Minimum Fair Wage Standards Act ("OMWFSA"), O.R.C. 4111.01, *et seq*. and Fed. R. Civ. P. 23 for Defendant's failure to pay Plaintiff and other similarly-situated employees all earned minimum and overtime wages.

2. Plaintiff, the Collective Members and the Class Members are current and former employees of Defendant. Plaintiff brings this action on behalf of herself and all similarly-situated current and former non-exempt hourly employees of Defendant.

3. Under the FLSA and OMWFSA, employers must pay all non-exempt employees an overtime wage premium of pay one and one-half times their regular rates of pay for all time they spend working in excess of 40 hours in a given workweek. Defendant failed to pay Plaintiff, the Collective Members and the Class Members one and one-half times their regular rate of pay for all time they spent working in excess of 40 hours in a given workweek. Plaintiff therefore

1

brings this Class Action and Collective action Complaint pursuant to Fed. R. Civ. P. 23 and 29 U.S.C. § 216(b) for Defendant's violation of federal and Ohio law as detailed further below.

4. Under the FLSA and OMWFSA, "[b]ona fide meal periods are not worktime. . . [t]he employee must be completely relieved from duty for the purposes of eating regular meals. . . . [t]he employee is not relieved if he is required to perform any duties, whether active or inactive, while eating." *See* 29. C.F.R. § 785.19. Defendant violated the FLSA and OMWFSA by automatically deducting a thirty-minute meal break from each and every shift Plaintiff, the Collective Members and the Class Members worked regardless of whether Plaintiff, the Collective Members and the Class Members were able to take a meal break, regardless of whether they were permitted to take a full thirty-minute meal break, and regardless of whether they were completely relieved from duty for thirty-minutes.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq.* because this civil action arises under the laws of the United States.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(i) because Defendant resides within this District.

7. At all relevant times, Plaintiff has been a resident of Ohio and performed work for Defendant at its Longmeadow Rehabilitation Center in Ravenna, Ohio.

8. Defendant regularly conducts business in and has engaged in the wrongful conduct alleged herein – and, thus, is subject to personal jurisdiction in – this judicial district.

9. Plaintiff, the Collective Members and the Class Members in their work for Defendant were employed by an enterprise engaged in commerce that had annual gross sales of at least $500,000.

**PARTIES**

10. At all times material to the matters alleged in this Complaint, Plaintiff was an employee of Defendant.

11. Plaintiff was employed by Defendant in the direct care nursing staff department from approximately October 10, 2022 through approximately November 18, 2022.

12. The Collective Members are all current and former non-exempt hourly employees who worked for Defendant in the United States at any point in the three years preceding the filing of the original Complaint.

13. The Class Members are all current and non-exempt hourly employees who worked for Defendant in the state of Ohio at any point in the three years preceding the filing of the Complaint.

14. The Class and Collective Members are non-exempt from the OMFWSA and FLSA overtime requirements.

15. At all material times, Defendant was an Ohio corporation duly licensed to transact business in the State of Ohio.

16. Under the OMFWSA and FLSA, Defendant is an employer. At all relevant times, Defendant had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiff's employment with Defendant. As a person who acted in the interest of Defendant in relation to the company's employees, Defendant is subject to liability under the OMFWSA and FLSA.

17. At all material times, Plaintiff and the Class and Collective Members were employees of Defendant as defined by the OMFWSA and FLSA, 29 U.S.C. § 203(e)(1).

18. At all material times, Plaintiff and the Class and Collective Members were non-exempt employees under 29 U.S.C. § 213(a)(1).

19. Plaintiff has given her written consent to be named party Plaintiff in this action pursuant to 29 U.S.C. § 216(b), a true and accurate copy of which is also attached to this Complaint as **"Exhibit A."**

## FACTUAL ALLEGATIONS

20. Defendant owns and operates skilled nursing facilities in Florida, Ohio, Pennsylvania, and Virginia.

21. Plaintiff was employed by Defendant in the direct nursing staff department at a skilled nursing facility in Ravenna, Ohio from on or about October 10, 2022 to on or about November 18, 2022.

22. Defendant's headquarters is located at 25201 Chagrin Blvd., Suite 190, Beachwood, Ohio 44122.

23. The Collective Members are all current and former non-exempt employees who worked for Defendant at any point in the three years preceding the filing of this Complaint. The Collective Members are non-exempt from the FLSA's minimum wage and overtime requirements.

24. The Class Members are all current and former non-exempt employees who worked for Defendant in Ohio at any point in the three years preceding the filing of this Complaint. The Class Members are non-exempt from the OMFWSA's overtime requirements.

25. At all relevant times, Plaintiff was compensated on an hourly basis.

26. In her work for Defendant, Plaintiff routinely worked in excess of forty hours in a given workweek.

27. During each and every workweek, Plaintiff, the Class and Collective Members were paid on an hourly basis.

28. At all relevant times, Plaintiff, the Collective Members and the Class Members were subject to Defendant's Meal Break Policy.

29. Pursuant to Defendant's Meal Break Policy, Defendant automatically deducts a thirty-minute meal break for each and every shift worked by Plaintiff, the Collective Members and the Class Members.

30. Defendant made this automatic 30-minute deduction from Plaintiff's, the Collective Members' and the Class Members' pay regardless of whether they were actually permitted to take a meal break, regardless of whether they were permitted to take a full thirty-minute meal break, and regardless of whether they were completely relieved from duty for thirty-minutes.

31. The job demands of Plaintiff, the Collective Members and the Class Members routinely foreclosed their ability to take any meal break, prohibited them from taking a full thirty-minute meal break, or prohibited them being completely relieved from duty for thirty-minutes.

32. Nevertheless, Defendant automatically deducted thirty minutes from every shift of worked by Plaintiff, the Collective Members and the Class Members, thereby denying them lawful minimum and overtime wages.

33. The novel Coronavirus has infected over 100 million Americans and caused the death of over one million Americans. (*See* https://coronavirus.jhu.edu/us-map, last visited (Oct. 13, 2023). Following the outbreak of the Coronavirus, Defendant implemented a company-wide policy requiring each of its hourly, non-exempt employees to undergo a physical and medical examination to check for symptoms of the Coronavirus at the end of each shift. The examination was required by Defendant and was necessary for each employee to perform his/her work

for Defendant. Unfortunately, Defendant refused to pay for this time. Defendant's conduct violates Federal law and Ohio law.

34. Plaintiff witnessed hundreds of other Defendant workers undergo similar Covid screening and testing off-the-clock.

35. Plaintiff knows and is aware that other of Defendant's facilities have COVID-19 screening procedures because there were multiple notices provided to Defendant's employees indicating that COVID-19 screening and prevention practices were being instituted across Defendant's facilities.

36. This COVID-19 screening and testing should have been paid by Defendant because it constitutes compensable time worked. During this time, Plaintiff and Class and Collective Members were subject to Defendant's control.

37. Plaintiff and Class and Collective Members were required to follow Defendant's instructions while waiting, during the COVID-19 screening, and after clocking out for the day. Defendant required every employee to complete the COVID-19 screening and it was not optional. Indeed, the COVID-19 screening was required by Defendant and its employees were required to comply under threat of discipline, including possible termination.

38. Additionally, Plaintiff and Class and Collective Members were confined to the premises of Defendant when they waited for the examinations and during the examinations.

39. Moreover, Defendant compelled its employees to perform specific tasks during the examinations. They were required to answer questions, submit to have their temperature taken, and wear masks.

40. In other words, Defendant directed, commanded, and restrained its employees during the COVID-19 examinations and testing; prevented them from using that time effectively

6

for their own purposes; and they remained subject to Defendant's control during the examinations and after clocking-out.

41. The COVID-19 screenings were integral and indispensable to the principal work performed by the Plaintiff and Class and Collective Members and were necessary to ensure a safe workplace and a safe environment for the patients of the Defendant's facilities. The COVID-19 examinations were also undertaken on Defendant's premises, were controlled and required by Defendant, and undertaken primarily for the benefit of Defendant.

42. Indeed, Defendant required Plaintiff and Class and Collective Members to undergo this screening for the purposes of overall safety of the patients of Defendant and to prevent the Plaintiff and Class and Collective Members from inadvertently and unintentionally infecting the patients. Likewise, the screening was necessary to ensure that Plaintiff and Class and Collective Members safely provided services in support of healthcare.

43. The COVID-19 examinations and testing were necessary to ensure that the virus did not infect Defendant's facilities. The examinations were also necessary to ensure that the virus did not disrupt the work performed by Plaintiff and Class and Collective Members or affect the business operations of Defendant. If Defendant did not have the COVID-19 screening, workers could inadvertently or unintentionally bring the virus into the Defendant's facilities causing a mass breakout of the virus infecting hundreds of other workers and/or patients.

44. The COVID-19 screenings were integral and indispensable to the principal activity and primary job duty performed by Plaintiff and Class and Collective Members, which was to provide healthcare services. The COVID-19 screenings were necessary for Plaintiff and Class and Collective Members to perform their primary job duty for Defendant. If Defendant cancelled the COVID-19 screening, Defendant's facilities could get contaminated with the virus, the patients

7

could get infected, and other employees of Defendant could get infected. In that event, Defendant's business would be disrupted, and Plaintiff and Class and Collective Members would not be able to do their work. Therefore, the COVID-19 screenings and testing were necessary to ensure that Plaintiff and Class and Collective Members could do their jobs for Defendant.

45. The COVID-19 screenings and testing were also integral and indispensable to the principal activity and primary job duty performed by Plaintiff and the Class and Collective Members because the COVID-19 screenings were necessary to ensure that Defendant's workers could perform their work safely, to prevent contamination from the virus, and to keep Defendant's patients safe.

46. Thus, the COVID-19 screenings were necessary for the Plaintiff and Class and Collective Members to do their work for Defendant and without the screenings, their ability to do their jobs would have been compromised. Plaintiff and the Class and Collective Members could not skip the screenings altogether without the safety or effectiveness of their principal activities being substantially impaired. The screenings prevented the COVID-19 virus from spreading through Defendant's facilities and infecting employees and products, thereby allowing Defendant's employees to continue to work.

47. Under these facts, the COVID-19 screenings and testing were for the benefit of Defendant and its patients. The COVID-19 screenings and testing allowed Defendant's operations to continue. Similarly, the COVID-19 screenings and testing benefited Defendant's patients.

48. The COVID-19 screenings and testing were also primarily for the benefit of Defendant because Defendant's COVID-19 screening and testing policy was intended to keep its facilities and customers as safe as possible given the circumstances of the global pandemic. Defendant's COVID-19 screening policy was also intended to ensure the safety of Defendant's

workers and to ensure that Defendant complied with the law. By making the workplace safe, Defendant increased the efficiency of Defendant's operations. Moreover, having employees who are healthy and able to perform their work ensures that Defendant can continue to operate and earn profits.

49. Moreover, the COVID-19 screenings and testing identified above were not incidental activities for the Plaintiff and Class and Collective Members, but instead, this time was integral and indispensable to their principal activity, was controlled by Defendant, was required by Defendant, was conducted on Defendant's premises, and was performed primarily for the benefit of Defendant and its customers. Therefore, the time spent by the Plaintiff and Class and Collective Members completing the COVID-19 screenings and testing is compensable.

50. In light of Defendant's conduct, Plaintiff and Class and Collective Members are owed significant unpaid wages and penalties.

51. Plaintiff and Class and Collective Members are and were non-exempt employees.

52. Plaintiff and Class and Collective Members are and were paid on an hourly rate basis.

53. When they work more than forty (40) hours in a workweek, they are entitled to overtime pay.

54. As a result of Defendant's company-wide policies, Plaintiff and Class and Collective Members were not paid for all time worked each day and are owed significant unpaid wages.

55. Defendant's method of paying Plaintiff and Class and Collective Members in violation of Ohio law was willful and was not based on a good faith and reasonable belief that their conduct complied with the law. Defendant knew the requirement to pay for all time worked, but intentionally and/or recklessly chose not to do so.

## **COLLECTIVE ACTION ALLEGATIONS**

56. Plaintiff and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

57. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) on her own behalf and as a representative of individuals similarly situated who are current or former non-exempt hourly employees employed by Defendant.

58. Defendant subjected all of their non-exempt hourly employees, including Plaintiff and the Collective Members, to their policy and practice of failing to pay for all hours worked.

59. Plaintiff's claims stated in this Complaint are essentially the same as those of the Collective Members. This action is properly maintained as a collective action because in all pertinent aspects the employment relationship of individuals similarly situated to Plaintiff is identical or substantially similar.

60. The Collective Members perform or have performed the same or similar work as Plaintiff.

61. Defendant's failure to pay minimum wage and overtime compensation required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of Plaintiff or the Collective Members.

62. Although the exact amount of damages may vary among the Collective Members, the damages for the Collective Members can be easily calculated by a simple formula. The claims of all Collective Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by Defendant that caused harm to all of the Collective Members.

63. As such, Plaintiff brings these FLSA claims as a collective action on behalf of the following class:

> **All of Defendant's current and former non-exempt hourly employees who worked for Defendant at any time from three years preceding the filing of the Complaint to the present.**

64. Defendant's unlawful conduct, as described herein, is pursuant to Defendant's corporate policy or practice of minimizing labor costs by refusing and/or failing to properly compensate its employees according to the FLSA.

65. Defendant is aware or should have been aware that federal law prohibited them from not paying Plaintiff and the Collective Members all minimum wage and overtime as detailed herein.

66. Defendant's unlawful conduct has been widespread, repeated, and consistent.

67. This action is properly brought and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b).

68. Upon information and belief, the individuals similarly situated to Plaintiff includes thousands of non-exempt hourly employees currently and/or formerly employed by Defendant. Plaintiff is unable to state the precise number of similarly-situated employees because that information is solely in Defendant's possession, custody, or control, but it can be readily ascertained from their employment records.

69. Notice can be provided to the Collective Members by First Class Mail to the last address known to Defendant, via email at the last known email address known to Defendant and by text message to the last known telephone number known to Defendant.

**OHIO RULE 23 CLASS DEFINITIONS AND ALLEGATIONS**

70. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

71. Plaintiff brings her Rule 23 overtime class claims on an opt-in basis pursuant to SB 47's amendments to R.C. 4111.03 and 4111.10.

72. Plaintiff brings Claims for Relief for violation of Ohio wage and hour laws as a class action pursuant to Rule 23(a), (b)(2), and (b)(3). Plaintiff brings these claims on behalf of herself and all members of the following class comprised of:

> **Rule 23 Class**
>
> **The Class Members are all of Defendant's current and former non-exempt hourly employees who worked for Defendant, within Ohio, at any time from three years preceding the filing of the Complaint to the present.**
>
> **Numerosity (Rule 23(a)(1)).**

73. The Class Members are so numerous that joinder of all members is impracticable. Plaintiff on information and belief alleges, that Defendant employed greater than one hundred people who satisfy the definition of the Class Members.

    a. **Existence of Common Questions of Law and Fact (Rule 23(a)(2)).**

74. Common questions of law and fact exist as to the Plaintiff and the Class Members including, but not limited to, the following:

    a. Whether Defendant unlawfully failed to pay the Class Members all overtime wages, in violation of the Ohio Minimum Fair Wage Standards Act ("OMFWSA");

    b. Whether Defendant unlawfully failed to keep and maintain accurate and true records of the hours worked by the Class Members as required by applicable law; and

      c. The damages sustained and the proper measure of restitution recoverable by members of the Class Members.

### b. Typicality (Rule 23(a)(3)).

75. Plaintiff's claims are typical of the Class Members' claims. Plaintiff, like the Class Members, was subjected to Defendant's illegal scheme to maximize profits by depriving their employees of minimum wage and overtime compensation.

### c. Adequacy (Rule 23(a)(4)).

76. Plaintiff will fairly and adequately represent and protect the interests of the Class Members. Plaintiff has retained counsel competent and experienced in complex class actions, the FLSA, and state labor and employment litigation.

### d. Injunctive and Declaratory Relief (Rule 23(b)(2)).

77. Class certification of the Rule 23 claims is appropriate pursuant to Rule 23(b)(2) because Defendant acted or refused to act on grounds generally applicable to the Class Members, making appropriate declaratory relief with respect to the Class Members as a whole.

### e. Predominance and Superiority of Class Action (Rule 23(b)(3)).

78. Class certification of the Rule 23 claims is also appropriate under Rule 23(b)(3) because questions of law and fact common to the Class Members predominate over any questions affecting only individual members of the class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's common and uniform policies and practices illegally deprived Plaintiff and all similarly situated employees of wages; thus, making the question of liability and damages much more manageable and efficient to resolve in a class action, compared to hundreds of individual trials. The damages suffered by individual Class Members are small compared to the expense and burden of individual prosecution

of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's practices.

79. Plaintiff intends to send notice to all Class Members to the extent required by Rule 23.

## COUNT ONE: FAIR LABOR STANDARDS ACT
## FAILURE TO PAY FOR ALL HOURS WORKED
### (on behalf of Plaintiff and the Collective Members)

80. Plaintiff and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

81. Defendant has a consistent enterprise-wide policy of requiring Plaintiff and the Collective Members to perform work while off the clock and failing and/or refusing to compensate Plaintiff the Collective Members at one and one-half times their regular hourly rate for all the time they worked in excess of forty (40) hours.

82. At all relevant times, Plaintiff and the Collective Members were subject to Defendant's Meal Break Policy.

83. Pursuant to Defendant's Meal Policy, Defendant automatically deducts a thirty-minute meal break for each and every shift worked by Plaintiff and the Collective Members.

84. Defendant made this automatic 30-minute deduction from Plaintiff's and the Collective Members' pay regardless of whether they were actually permitted to take a meal break, regardless of whether they were permitted to take a full thirty-minute meal break, and regardless of whether they were completely relieved from duty for thirty-minutes.

85. The job demands of Plaintiff and the Collective Members routinely foreclosed their ability to take any meal break, prohibited them from taking a full thirty-minute meal break, or prohibited them from being completely relieved from duty for thirty-minutes.

86. Nevertheless, Defendant automatically deducted thirty minutes from every shift worked by Plaintiff and the Collective Members thereby denying them lawful minimum and overtime wages.

87. Following the outbreak of the Coronavirus, Defendant implemented a company-wide policy requiring each of its hourly, non-exempt employees to undergo a physical and medical examination to check for symptoms of the Coronavirus each shift. This examination was imposed by Defendant as a requirement at the end of each shift. The examination was required by Defendant and was necessary for each employee to perform his/her work for Defendant. Unfortunately, Defendant refused to pay for this time. Defendant's conduct violates Federal law and Ohio law.

88. Although at this stage, Plaintiff and the Collective Members are unable to state the exact amount owed for all time worked during the course of their employment, Plaintiff and the Collective Members believe that such information will become available during the course of discovery. Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

89. At all relative times, Plaintiff and the Collective Members and the Class Members have been subject to Defendant's policy of requiring Plaintiff and the Collective Members to spend time working at the end of their shifts and after clocking out at the end of their shifts.

15

90. Defendant knew that – or acted with reckless disregard as to whether – its refusal or failure to properly compensate Plaintiff and the Collective Members over the course of their employment would violate the FLSA, and Defendant was aware of the FLSA's minimum wage and overtime requirements. As such, Defendant's conduct constitutes a willful violation of the FLSA.

91. As a result of Defendant's failure or refusal to pay Plaintiff and the Collective Members for all hours worked, and Defendant's failure or refusal to pay Plaintiff and the Collective Members one-and-one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in any given workweek, Defendant violated 29 U.S.C. §§ 206 and 207(a). Plaintiff and the Collective Members are therefore entitled to compensation of one and one-half times their regular rate of pay, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

### COUNT TWO: OHIO MINIMUM FAIR WAGE STANDARDS ACT
### FAILURE TO PAY FOR ALL HOURS WORKED
### (on behalf of Plaintiff and the Class Members)

92. Plaintiff and the Class Members reallege and incorporate by reference all allegations in all preceding paragraphs.

93. "FLSA and Ohio Minimum Fair Wage Standards Act claims are subject to [the] same standards." *Craig v. Landry's, Inc.*, No. 1:16-CV-277, 2016 WL 3406032, at *3 (S.D. Ohio June 21, 2016) (citing *Haight*; *Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp.2d 725, 732 (S.D. Ohio 2006); *Pritchard v. Dent Wizard Int'l. Corp.*, 210 F.R.D. 591, 596 (S.D. Ohio 2002)).

94. Defendant has a consistent enterprise-wide policy of requiring Plaintiff and the Class Members to perform work while off the clock and failing and/or refusing to compensate

Plaintiff the Class Members at one and one-half times their regular hourly rate for all the time they worked in excess of forty (40) hours.

95. At all relevant times and the Class Members were subject to Defendant's Meal Break Policy.

96. Pursuant to Defendant's Meal Break Policy, Defendant automatically deducts a thirty-minute meal break for each and every shift worked by Plaintiff and the Class Members.

97. Defendant made this automatic 30-minute deduction from Plaintiff's and the Class Members' pay regardless of whether they were actually permitted to take a meal break, regardless of whether they were permitted to take a full thirty-minute meal break, and regardless of whether they were completely relieved from duty for thirty-minutes.

98. The job demands of Plaintiff and the Class Members routinely foreclosed their ability to take any meal break, prohibited them from taking a full thirty-minute meal break, or prohibited them being completely relieved from duty for thirty-minutes.

99. Nevertheless, Defendant automatically deducted thirty minutes from every shift worked by Plaintiff and the Class Members, thereby denying them lawful minimum and overtime wages.

100. Following the outbreak of the Coronavirus, Defendant implemented a company-wide policy requiring each of its hourly, non-exempt employees to undergo a physical and medical examination to check for symptoms of the Coronavirus each shift. This examination was imposed by Defendant as a requirement to work each shift. The examination was required by Defendant and was necessary for each employee to perform his/her work for Defendant. Unfortunately, Defendant refused to pay for this time. Defendant's conduct violates Federal law and Ohio law.

17

101. Defendant required its employees to arrive prior to the start of their scheduled shifts. However, when employees arrived, they were not allowed to clock-in for the day until they passed a physical and medical examination to screen for symptoms of COVID-19. Because they clocked in after completing the COVID-19 screenings, no employee was paid for the time spent in the COVID-19 screening.

102. At all relative times, Plaintiff and the Class Members have been subject to Defendant's policy of requiring Plaintiff and the Class Members to spend time completing training videos while not clocked in.

103. Although at this stage, Plaintiff and the Class Members are unable to state the exact amount owed for all time worked during the course of their employment, Plaintiff and the Class Members believe that such information will become available during the course of discovery. Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

104. As a result of Defendant's failure or refusal to pay Plaintiff and the Class Members all minimum wages and overtime due under Ohio law, Plaintiff and the Class Members are entitled to compensation for all such unpaid wages, to be proven at trial, plus treble damages and interest, reasonable attorney's fees, and costs.

WHEREFORE, Plaintiff, Latasha Walker, individually, and on behalf of all other similarly situated persons, requests that this Court grant the following relief in Plaintiff's, the Collective Members' and the Class Members' favor, and against Embassy Healthcare:

A. For the Court to declare and find Embassy Healthcare committed one or more of the following acts:

      i. violated the minimum wage and overtime provisions of the FLSA;

      ii. willfully violated the minimum wage and overtime provisions of the FLSA;

      iii. violated the minimum wage and overtime provisions of the OMFWSA; and

      iv. willfully violated the minimum wage and overtime provisions of the OMFWSA.

B. For the Court to award damages in the amounts of all unpaid overtime wages due and owing to Plaintiff, the Collective Members and the Class Members;

C. For the Court to award compensatory damages, including liquidated damages pursuant to 29 U.S.C. § 216(b), in amounts to be determined at trial;

D. For the Court to award prejudgment and post-judgment interest on any damages awarded;

E. For the Court to award all treble damages, interest attorney fees and costs owed to Plaintiff and the Class Members under the OMFWSA;

F. For the Court to award Plaintiff's and the Collective Members' reasonable attorneys' fees and costs of the action pursuant to 29 U.S.C. § 216(b) and all other causes of action set forth in this Complaint;

G. For the Court to provide a reasonable incentive award for Plaintiff to compensate her for the time he spent attempting to recover wages for the Collective Members and for the risks she took in doing so; and

H. Such other relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

19

Plaintiff, the Collective Members and the Class Members hereby demand a jury trial on all causes of action and claims with respect to which they each have a state and/or federal constitutional right to a jury trial.

DATED: October 30, 2023

                    Respectfully submitted,

s/ *Michael L. Fradin*
Michael L. Fradin, Esq. (OH#0091739)
8401 Crawford Ave. Ste. 104
Skokie, IL 60076
Telephone: 847-986-5889
Facsimile: 847-673-1228
Email: mike@fradinlaw.com

By: /s/ *James L. Simon*
James L. Simon (OH#0089483)
SIMON LAW CO.
11 ½ N. Franklin Street
Chagrin Falls, Ohio 44023
Telephone: (216) 816-8696
Email: james@simonsayspay.com